IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CHRISTOPHER GILMER GARNESS,

                                                 OPINION AND ORDER

            Plaintiff,

                                                 15-cv-787-bbc

    v.

WISCONSIN DEPARTMENT OF CORRECTIONS,
CATHERINE PARR, MR. MIDDLETON,
ANN CARTMAN, KASONDRA MOLL and
SEVERAL JOHN AND JOHN DOE DOC EMPLOYEES,

           Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Pro se prisoner Christopher Gilmer Garness is suing various prison officials for various reasons. Plaintiff has made an initial partial payment of the filing fee in accordance with 28 U.S.C. § 1915(b)(1), so his complaint is ready for screening under 28 U.S.C. §§ 1915(e)(2) and 1915A. Having reviewed the complaint, I conclude that plaintiff cannot proceed at this time because his complaint has numerous defects, some that can be corrected and some that cannot. I will give plaintiff an opportunity to file an amended complaint that complies with the Federal Rules of Civil Procedure.

OPINION

A.  Problems that Cannot Be Corrected

      Some of the problems with plaintiff's complaint cannot be fixed. First, plaintiff has

1

named the Wisconsin Department of Corrections as a defendant, but state agencies such as the department cannot be sued under the Constitution or 42 U.S.C. § 1983, the statute which allows individuals to seek damages for constitutional violations. Will v. Michigan Dept. of State Police, 491 U.S. 58, 65-66 (1989). Rather, plaintiff must identify individual prison employees who were personally involved in violating his rights. Kuhn v. Goodlow, 678 F.3d 552, 555-56 (7th Cir. 2012). If plaintiff chooses to file an amended complaint, he should not name the department as a defendant.

Second, part of plaintiff's claim against defendants Ann Cartman and Kasondra Moll is that they lied at his revocation hearing. Because this claim would call into question the validity of his confinement, he cannot file a lawsuit on this issue in federal court until he exhausts his remedies in state court. If he does not obtain relief in state court, he may then file a petition for a writ of habeas in federal court under 28 U.S.C. § 2254. Wallace v. Kato, 549 U.S. 384, 392 (2007) ("[H]abeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement."). In short, plaintiff cannot seek relief for unlawful confinement under § 1983 until and unless the revocation decision is set aside through other means.

Third, plaintiff cannot obtain an injunction for many of the things he is seeking. For example, plaintiff says that he wants defendants to "sell" him various items such as multiple vehicles and lawn mowers at a greatly reduced price. However, an injunction must be tied directly to the harm caused by the defendants' allegedly unlawful conduct. 18 U.S.C. § 3626(a)(1)(A) (injunctive relief "in any civil action with respect to prison conditions shall

extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs"). Because none of plaintiff's claims are related to vehicles or lawn mowers, he should delete those requests if he decides to file an amended complaint.

Fourth, it is clear that some of plaintiff's allegations do not state a claim upon which relief may be granted. With respect to defendant Catherine Parr, plaintiff alleges that she treated him for mental health issues without a proper license and placed him in solitary confinement for 35 days without justification, but neither of those allegations supports a claim under the Constitution. First, licensing requirements are a matter of state regulation; an individual can be disciplined by the state or a professional association for failing to adhere to licensing requirements, but those requirements do not give patients a personal right to sue for violations. Second, short-term placements in segregation do not violate the Constitution, even if the placement was not supported by a good reason. Sandin v. Conner, 515 U.S. 472, 486 (1995); Leslie v. Doyle, 125 F.3d 1132, 1135 (7th Cir. 1997).

With respect to defendant Middleton, plaintiff alleges that this defendant called plaintiff many offensive names, such as "whore," "bitch" and "slave." Although I agree with plaintiff that there is no legitimate reason for that language, name calling does not violate the Constitution. DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000). See also Beal v. Foster, 803 F.3d 356, 358 (7th Cir. 2015) ("[M]ost verbal harassment by jail or prison guards does not rise to the level of cruel and unusual punishment.").

Also included in plaintiff's complaint are allegations against prison staff members who are not listed in the caption of the complaint. Generally, a plaintiff must include everyone

3

he wishes to sue in the caption. Fed. R. Civ. P. 10(a); Myles v. United States, 416 F.3d 551, 551 (7th Cir. 2005). Although I could ignore these allegations for plaintiff's failure to comply with that rule, I will address the allegations that clearly have no legal merit so that plaintiff knows not to include the same allegations in his amended complaint, if he chooses to file one.

First, plaintiff alleges that "Mr. Wellington" and "Ms. Wittek" failed to conduct an adequate "PREA" investigation. Presumably, plaintiff is referring to the Prison Rape Elimination Act and he means to allege that Wellington and Wittek should have done more to investigate an alleged sexual assault. Prison officials have a duty under the Constitution to protect prisoners from sexual assault, e.g., Farmer v. Brennan, 511 U.S. 825 (1994), but the Constitution does not require officials to investigate or otherwise correct wrongdoing after it has happened. Whitlock v. Brueggemann, 682 F.3d 567, 588-89 (7th Cir. 2012); Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002). Further, PREA does not give prisoners a personal right to sue for an official's failure to comply with the Act's requirements. Ross v. Gossett, No. 15-CV-309-SMY-PMF, 2016 WL 335991, at *4 (S.D. Ill. Jan. 28, 2016) ("[N]o court that has considered the issue has found that a private right of action exists under [PREA].").

Second, plaintiff says that "Ms. Topouk" and "Ms. Richardson" rejected approximately 150 prison grievances. However, prisons have no duty to provide a grievance system, so denying or rejecting a grievance does not violate the Constitution. Kervin v. Barnes, 787 F.3d 833, 835 (7th Cir. 2015); Owens v. Hinsley, 635 F.3d 950, 953-54 (7th

Cir. 2011). Although officials may not retaliate against a prisoner for filing a grievance, Bridges v. Gilbert, 557 F.3d 541, 555-56 (7th Cir. 2009), plaintiff does not allege retaliation in his complaint.

Third, plaintiff says that "Lt. Haitman" and "All CVCTF" employees will not respond to his letters. Plaintiff has a right to complain under the First Amendment, but he does not have a constitutional right to a response. Baltoski v. Pretorius, 291 F. Supp. 2d 807, 811 (N.D. Ind. 2003) ("The right to petition the government for redress of grievances . . . does not guarantee a favorable response, or indeed any response, from state officials.").

Fourth, plaintiff says that "Captain Wallace" and "Mr. Stenke" gave him "bogus conduct reports." However, the court of appeals has held that it "will not overturn a disciplinary decision solely because evidence indicates the claim was fraudulent." McPherson v. McBride, 188 F.3d 784, 787 (7th Cir. 1999); see also Lagerstrom v. Kingston, 463 F.3d 621, 624-25 (7th Cir. 2006). Although this law may seem unfair, it relates to the nature of the due process clause, which is directed primarily at improving the accuracy of decisions through fair procedures rather than direct review of the evidence. McPherson, 188 F.3d at 787 ("Therefore, even assuming fraudulent conduct on the part of prison officials, the protection from such arbitrary action is found in the procedures mandated by due process.").

Finally, plaintiff says that numerous prison officials will not report unspecified "abuses" to "the authorities." However, I am not aware of any duty under the Constitution that would require prison officials to reporting wrongdoing to the police or other officials.

If plaintiff chooses to file an amended complaint, he should not include any of the

5

allegations discussed above.

### B. Problems that Might Be Corrected

The remaining problems with plaintiff's complaint relate to his failure to comply with the Federal Rules of Civil Procedure. Rule 20 prohibits a plaintiff from bringing unrelated claims against different defendants. Rule 8 requires a plaintiff to give defendants fair notice of his claims. Plaintiff's complaint violates both rules.

1. Rule 20

With respect to Rule 20, even if I do not consider the allegations discussed in the previous section, plaintiff's complaint includes claims that belong in at least five separate lawsuits:

Lawsuit #1: Defendants Ann Cartman and Kasondra Moll, along with Janae Bouche, placed plaintiff on a probation hold without justification and "forced" him to stop taking medication for his bipolar disorder;

Lawsuit #2:

- Defendant Catherine Parr gave plaintiff improper mental health treatment and failed to protect him from "sex and hate crimes" by other patients;

- Defendant Middleton failed to protect plaintiff from "sexual and spiritual abuses";

Lawsuit #3: "Dr. Luxford" failed to warn plaintiff about side effects of lithium and

prescribed a medication to which plaintiff is allergic;

Lawsuit #4: "Ms. Geissler" refused to make copies and provide postage for plaintiff's notice of claim;

Lawsuit #5: Unnamed health care staff failed to provide treatment for plaintiff's hepatitis C and knee problems.

Under George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007), I may apply the initial partial payment plaintiff has made to only one of the five Lawsuits I have identified above. Plaintiff will have to choose which Lawsuit that is. That Lawsuit will be the only Lawsuit assigned to this case number.

With respect to the other four Lawsuits, plaintiff has to make a choice. One option for plaintiff is to pursue the other Lawsuits separately. In that case, he will be required to pay a separate filing fee for each Lawsuit. In addition, plaintiff may receive a "strike" under 28 U.S.C. § 1915(g) for each of the separate Lawsuits he pursues if the Lawsuit is dismissed for failure to state a claim upon which relief may be granted or one of the other reasons listed in § 1915(g). As plaintiff may be aware, once a prisoner receives three strikes, he is not able to proceed in new cases without first paying the full filing fee except in narrow circumstances. 28 U.S.C. § 1915(g).

Alternatively, plaintiff may choose to dismiss one or more of the other Lawsuits voluntarily. If he chooses this latter route, he will not owe additional filing fees or face a strike for any Lawsuit he dismisses. Any Lawsuit dismissed voluntarily would be dismissed without prejudice, which means that plaintiff would be able to bring it at another time, so

long as he files it before the statute of limitations has run.

2. <u>Rule 8</u>

Regardless which Lawsuit or Lawsuits plaintiff decides to pursue, he will have to file at least one amended complaint because his allegations do not provide adequate notice of any of his claims, as required by Federal Rule of Civil Procedure 8. Accordingly, I will give plaintiff instructions regarding the additional information he should include for any claim he decides to pursue.

As a general matter, plaintiff should keep in mind that the court is not familiar with his situation. Therefore, he should draft the amended complaint as if he were telling a story to people who know nothing about what has happened to him. This means that someone reading the complaint should be able to answer the following questions:

- What are the facts that form the basis for plaintiff's claims?
- What actions did each defendant take that violated plaintiff's rights?
- What rights does plaintiff believe were violated?
- What relief does plaintiff want the court to provide?

Plaintiff should set forth his allegations in separate, numbered paragraphs using short and plain statements.

Any person that plaintiff wishes to sue must be listed as a defendant in the caption of the complaint. If plaintiff does not know the name of a particular defendant, he may identify that defendant as a "John Doe." To make it clear how many unnamed staff

members plaintiff wishes to sue, he should identify each one in the body of his complaint as a separate number, such as "John Doe 1," "John Doe 2," "John Doe 3" and so on. Any time plaintiff refers to an unknown defendant in his complaint, he should use this system. Plaintiff should provide as many details as he can about any unnamed defendants so that they can be identified later in the case. Some of these details might include the job title of the staff member, the date and approximate time plaintiff had contact with the staff member, anything plaintiff remembers about what he told the staff member, what the staff said and did in response and any physical characteristics of the staff member. If plaintiff does not know this information, he should say so and explain the efforts he took to uncover the information.

Below I will list questions that plaintiff should answer for each Lawsuit that he wishes to pursue. In answering each of these questions, <u>plaintiff should be as specific as possible</u>, providing as many details as he knows. If plaintiff does not know the answer to a particular question, he should say so.

This does NOT mean that plaintiff must pursue all or any of these Lawsuits. If plaintiff decides that he does not want to go forward with a particular Lawsuit, he does not have to file an amended complaint for that Lawsuit and he does not have to answer the questions related to that lawsuit.

<u>Lawsuit #1</u>

- Who are Ann Cartman and Kasondra Moll and Janae Bouche? Where did they work?

What are their job titles?  If you do not know their job titles, what type of work did they do?

- What reason or reasons did they give for placing you on a probation hold? Did they identify a rule of supervision that you violated?

- When were you placed on a probation hold and how long did it last?

- What do you mean when you say that Cartman, Moll and Bouche "forced" you to stop taking your medication?  What did each of them actually do?  Did they provide a reason?  If so, what was it?

- When did you stop taking your medication and how long did you go without it?

- Were you harmed as a result of not having your medication?  If so, what was the harm?  Describe what happened in as much detail as you can.

Lawsuit #2:

- Who is Catherine Parr?  Where did she work? What is her job title?  If you do not know her job title, what type of work did she do?

- What was wrong with the treatment that Parr provided?  What particular treatment decisions are you challenging?  What do you believe that she should have done that she failed to do?

- How were you harmed by Parr's treatment decisions?

- What are the "sex crimes" and "hate crimes" that she failed to protect you from? Who attacked you?  What did this person or these persons do to you?  When and

where did it happen? Answer these questions for each incident that you believe Parr should have stopped.

- What injuries did you suffer as a result of each "sex crime" and "hate crime"?

- Did Parr know that the "sex crimes" and "hate crimes" were likely to occur? If so, how did she know that? What did she know about each one?

- How could Parr have protected you from the "sex crimes" and "hate crimes"?

- Who is "Mr. Middleton"? Where did he work? What is his job title? If you do not know his job title, what type of work did he do?

- What are the "sexual and spiritual abuses" that he failed to protect you from? Are these abuses the same as the "sex crimes" and "hate crimes" that Parr failed to stop?

- When and where did the abuse happen?

- What injuries did you suffer as a result of the abuse?

- What should Middleton have done to protect you from the abuse?

Lawsuit #3:

- Who is Dr. Luxford? Where did he work? What is his job title? If you do not know his job title, what type of work did he do?

- When did he prescribe lithium for you? How long did you take it?

- What side effect of lithium did Luxford fail to tell you about?

- Do you believe that Luxford knew about the side effect when he gave you lithium? If so, why do you believe that?

11

- Describe the incident in which you "almost died." What happened to you? What symptoms did you experience? When did it happen? Why do you believe that your symptoms were caused by lithium?

- What medicine did Luxford prescribe that you were allergic to?

- How do you know that you are allergic to that medicine?

- When did Luxford prescribe the medicine and how long did you take it?

- Did Luxford have any reason to know that you were allergic to the medicine? If so, how did he know?

- What symptoms did you experience after you took that medicine?

Lawsuit #4:

- Who is Ms. Geissler? Where did she work? What is her job title? If you do not know her job title, what type of work did she do?

- Why did she refuse to make copies for you and provide postage?

- When did she do that?

- Were you able to file your notice of claim? If so, did Geissler's actions have any other effect on your ability to litigate a case?

- What was the notice of claim about?

Lawsuit #5:

- Do you know the names of the individuals who refused to provide treatment for your

12

hepatitis C and knee problems? If so, you should provide those names. If you do not know their names, you should identify each of the individuals involved as a "John Doe," using the numbering system described above.

- What did each individual do to violate your rights? When did each of those incidents occur?

- What treatment for hepatitis C do you believe you should have received? Why do you believe you need that treatment?

- What type of knee problem do you have?

- What type of treatment do you believe you should have received for your knee problem? Why do you believe that you need that treatment?

- What reason or reasons did each individual involved give for refusing to provide treatment for your hepatitis C and knee problems?

- What injuries have you suffered as a result of not receiving the treatment that you want?

C. Summary

Plaintiff has three tasks he must complete in response to this order. First, plaintiff must decide whether he wishes to proceed with Lawsuit #1, Lawsuit #2, Lawsuit #3, Lawsuit #4 OR Lawsuit #5 under the number assigned to this case. In other words, plaintiff should decide which of the five Lawsuits is most important to him. Plaintiff should tell the court in a letter which Lawsuit that is.

Second, plaintiff must decide whether he wishes to go forward with any of the other Lawsuits. Because plaintiff faces filing fees and potential "strikes" for each Lawsuit he pursues, he should consider carefully the merits and relative importance of each of his potential Lawsuits when choosing which of them he wishes to pursue.

Third, for each Lawsuit that plaintiff wants to pursue, he must file a separate amended complaint with additional allegations, in accordance with the directions in this opinion. For example, if plaintiff decides he wants to pursue the claims listed under Lawsuit #1 and Lawsuit #2, plaintiff must file *two* amended complaints (one amended complaint for Lawsuit #1 and one amended complaint for Lawsuit #2). If he decides he wants to pursue claims in three of the Lawsuits, he must file three amended complaints, and so on. In each amended complaint that he files, he should try to the best of his ability to answer all the court's questions that are related to that particular Lawsuit.

Once plaintiff files one or more amended complaints, I will screen that complaint or complaints under 28 U.S.C. §§ 1915(e)(2) and 1915A to determine whether plaintiff may proceed on any of the claims that he chose. If plaintiff does not respond to this order, I will dismiss the case for plaintiff's failure to prosecute.

ORDER

IT IS ORDERED that

1. Defendant Wisconsin Department of Corrections is DISMISSED from the case.

2. Plaintiff Christopher Gilmer Garness may have until February 24, 2016, to tell the

court in a letter whether he wishes to proceed with Lawsuit #1, Lawsuit #2, Lawsuit #3, Lawsuit #4 OR Lawsuit #5 under 15-cv-787-bbc, which is the number assigned to this case. Plaintiff must pick one and only one of these Lawsuits to proceed under case no. 15-cv-787-bbc.

3. Plaintiff may have until February 24, 2016, to tell the court which other Lawsuits he wishes to pursue under separate case numbers, if any, and which Lawsuits he will dismiss voluntarily, if any.

4. Plaintiff may have until February 24, 2016, to file a separate amended complaint for each Lawsuit that he wants to pursue. If plaintiff combines more than one Lawsuit in a complaint, I will dismiss that complaint under Rule 20 of the Federal Rules of Civil Procedure. In each amended complaint that he files, plaintiff should attempt to answer each of the questions asked by the court with respect to the claims that are in that amended complaint. If plaintiff does not provide adequate notice of a claim, it will be dismissed under Rule 8 of the Federal Rules of Civil Procedure.

5. For any Lawsuit that plaintiff dismisses voluntarily, he will not owe a filing fee. He will be free to refile that Lawsuit at a later date, so long as the Lawsuit is timely.

6. For each additional Lawsuit plaintiff chooses to pursue, he will owe a separate $350 filing fee and will be required to make an initial partial payment under 28 U.S.C. § 1915(b)(1).

7.  If plaintiff fails to respond to this order by February 24, 2016, I will enter an order dismissing his claims without prejudice for his failure to prosecute.

Entered this 3d day of February, 2016.

> BY THE COURT:
> /s/
> BARBARA B. CRABB
> District Judge